FILED
MAY 30 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Luis Ricardo Munoz Galvez and
Enedina Hernandez Gonzalez,

Debtors.

Case No. 14-10076-B-13

DC No. MHM-1

**MEMORANDUM DECISION REGARDING MOTION FOR
REVIEW AND DISGORGEMENT OF FEES**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. B.A.P. R. 8013-1.

Kristen M. Gates, Esq., appeared on behalf of the moving party, Michael H. Meyer, Esq., chapter 13 trustee.

Thomas O. Gillis, Esq., appeared on behalf of the debtors, Luis Ricardo Munoz Galvez and Enedina Hernandez Gonzalez.

     Before the court is a motion filed by the chapter 13 trustee, Michael H. Meyer (the "Trustee") requesting review and disgorgement of the fees which were paid to attorney Thomas O. Gillis ("Gillis"). The Trustee seeks relief pursuant to 11 U.S.C. § 329(b),[1] Federal Rule of Bankruptcy Procedure 2017, and Local Rule 2016-1(a) (the "Motion"). This Motion was initially filed as a request for the issuance of an order to show cause. However, Gillis filed an opposition to the substantive allegations in the Motion. At the

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (enacted Apr. 20, 2005).

hearing, he agreed that an order to show cause was not necessary and both parties consented to submit the matter on the record. For the reasons set forth, below the Motion will be granted. The court will order Gillis to disgorge to the Debtors, Luis Galvez and Enedina Gonzalez (the "Debtors"), a portion of the monies he received for attorney's fees and costs in the amount of $1,500, and to file a proof of compliance within 14 days.

This memorandum decision contains the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 105 and 329, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

Gillis, the attorney of record for the Debtors, is a licensed attorney who specializes in bankruptcy law and maintains staffed law offices in several cities throughout Central California.[2] Most of Gillis' clients are Hispanic and do not speak English. Gillis has to communicate with these clients through an interpreter. (Hr'g Tr. 6:13-17, Apr. 22, 2014, ECF No. 44.) This is the Debtors' second failed bankruptcy case filed within a period of 29 days. Both petitions were filed by Gillis' law office.[3]

This second petition was filed on behalf of the Debtors ten days after dismissal of the prior case. With the petition were a statement of the Debtors' social security numbers

---

[2] Gillis has two internet websites (http://gillis-law.glfpage.com; and http://www.gillisbklaw.com) which advertise that Gillis is experienced and has "the intensive kind of attention to detail that is crucial to these legal issues, you can be sure you will be taken care of properly." Gillis does not list any other attorneys on his website even though he has offices located in Modesto, Elk Grove, Yuba City, and Fresno.

[3] The first case, number 13-17781-B-13, was filed on December 11, 2013, and dismissed on December 30, 2013, after the Debtors failed to file the required schedules and chapter 13 plan. This petition was filed on January 9, 2014, and dismissed on April 24, 2014, after the Debtors failed to make payments to the Trustee.

and a verified master address list naming four different creditors. However, like the first petition, this second petition was incomplete. Missing were most of the documents required to administer the case.[4] The missing documents were not filed until January 21, after the court issued a notice informing the Debtors and Gillis that the documents were due. Those documents included a proposed chapter 13 plan (the "Plan"). Also filed was the "Rights and Responsibilities of Chapter 13 Debtors and their Attorney" form executed by both Gillis and the Debtors. Gillis typically accepts the Eastern District's "no-look" fee for chapter 13 cases; for this case, the no-look fee is $4,000. The Debtors paid Gillis $2,000 before the petition was filed and promised to pay him an additional $2,000 through the Plan.[5]

According to the schedules, the Debtors are married and have one 16 year old son. The Debtors are both employed as laborers and their gross income as reported on Schedule I is $1,621 per month. Additional income on Schedule I was listed as follows: income from rental property - $600 per month,[6] and Handyman income - $1,000 per month. After the payroll deductions, their combined monthly income was stated to be $3,138. According to Schedule I, line 13, the Debtors had no expectation of an increase or decrease in their income. The Debtors' expenses as reported on Schedule J totaled $1,233 (exclusive of the mortgage to be paid through the Plan). With this "budget," the schedules show that the Debtors have a net income of $1,905 per month to commit to

---

[4] The missing documents included the Summary of Schedules, Statistical Summary, Schedule A-Real Property, Schedule B-Personal Property, Schedule C-Exempt Property, Schedule D-Secured Creditors, Schedule E-Unsecured Priority Creditors, Schedule F-Unsecured Nonpriority Creditors, Schedule G-Executory Contracts, Schedule H-Co-debtors, Schedule I-Current Income, Schedule J-Current Expenditures, Statement of Financial Affairs ("SOFA"), Means Test-Form 22C, Attorney's Disclosure Statement and the Chapter 13 Plan.

[5] In the first case, Gillis did not file the Rights and Responsibilities Statement, or the disclosure of compensation required under § 329 and Rule 1016(b), so there is nothing in the record to show how much compensation Gillis was paid in connection with the first case.

[6] Schedule G lists a lease/contract but was incomplete in that it did not show the name or address of the other party to the executory contract or unexpired lease.

funding the Plan.

Based on the schedules and the Plan, the Debtors had two late-model vehicles encumbered by liens in the amounts of $23,701 and $22,310, for which the debt service payments total $889 per month. On Schedule A the Debtors valued their residence at $112,000, with a mortgage in the amount of $125,600. The mortgage arrearage is stated in the Plan to be $10,500.[7] The Debtors listed no priority claims, and $3,800 in general unsecured claims, which the Plan proposed to pay at 100%.

The Debtors' Plan required payments of $1,905 each month to the Trustee, of which $626 was devoted to servicing the on-going mortgage and $175 would amortize the mortgage arrearage. The two automobiles were provided for in class 2, requiring monthly payments of $889. The remainder would go toward the administrative expenses, including attorney's fees, and to the unsecured creditors.

On February 25, 2014, the Trustee convened the § 341 meeting of creditors. The Debtors appeared with attorney Steven Taylor ("Taylor"). The examining officer was attorney Kristen Gates ("Gates"), The Debtors do not speak enough English to respond to the questions, therefore a telephonic Spanish interpreter was sworn in and used to communicate with the Debtors and to put their testimony on the record.[8] Upon examination by Gates, the Debtors testified that they had signed the documents prepared by Gillis' office without reviewing them. The Debtor said, "only one or two questions, it was way too much information. We trusted . . . the lady that fill out the paperwork. And I – I asked a relative about the questions that I was not clear." (Gates' Decl. Ex. A 15:12-16, Mar. 24, 2014, ECF No. 29.)

With regard to any consultation with an attorney, the Debtors stated that Gillis "greeted them" when they arrived at the office, however, the actual consultation was with

---

[7] CitiMortgage, Inc., filed a proof of claim for $133,412.42 with arrearages of $11,750.

[8] Interpretalk® is a third-party independent company that offers telephonic interpreting service in 200 languages, 24 hours a day, and 365 days a year, at a per-minute rate.

4

a person named Consuelo. (*Id.* 15:17-16:14.) "Mr. Gillis just greet us because he had to go to court and he left us with Ms. Consuelo. For the most part, Ms. Consuelo has been taking care of us." When asked whether Consuelo had translated all the information on the documents for them in Spanish, the Debtor said, "We – we talked about certain things that she told that it was important for us to know. And I asked her a couple of questions and I asked a relative whatever other things I was – I had questions about. Basically, we didn't understand much but we trusted her." (*Id.* 16:5-14.) The Debtors were somehow led to believe that Consuelo was an attorney. (*Id.* 16:18-19). At the § 341 meeting, attorney Taylor was not sure who Consuelo was. However, it appears that she is the "manager" of Gillis' office in Fresno and not an attorney. (*Id.* 16:20-17:16.) Other than the "greeting" from Gillis, the Debtors did not actually meet with an attorney about their case until Taylor appeared at the § 341 meeting. (*Id.* 16:15-17:10.)

During the § 341 meeting, Gates discovered significant errors and inaccuracies in the petition and schedules, including the fact that the Debtors had failed to disclose the recent prior bankruptcy filing.[9] Among the errors and discrepancies was the Debtors' employment and income information. The Debtor testified that he no longer worked for the employer listed in his schedules and had held three different jobs in the last three months; he and his wife were now using their cars to advertise which generated an income similar to that listed in the schedules. When asked about the "handyman" income listed on Schedule I of $1,000, the Debtor responded that he might make $1,000 with that together with his other work, but felt sure he would make more soon. (*Id.* 8:7-12.) The room rental was listed as an income-generating business on Schedule I and also indicated on Schedule H as an executory contract/lease. However, the Debtors testified that they had never rented a room in their house, since they had only "three small rooms," one for

---

[9] Although Gillis himself had filed the prior case less than a month before filing the current case, it was not listed on the petition nor did he file a motion in this case to extend the automatic stay. Thus, the Debtors only received the benefit of the automatic stay for 30 days. 11 U.S.C. § 362(c)(3)(A).

5

them, and one for each of the children. (*Id.* 11:2-4.) When asked about the discrepancy, Taylor was only able to surmise that this error might be a "typo." (*Id.* 10:6-25.) The Co-debtor's second job with IHOP as a dishwasher was not disclosed on Schedule I. (*Id.* 13:4-13.) Also omitted from Schedule J was the Debtors' second son and the Co-debtor's father, whom she claims as a dependant on her taxes. (*Id.* 9:11-24; 11:20-12:4.) In addition, the Debtor holds a potential claim against his former employer based upon a work place injury, but that claim was not disclosed on Schedule B, nor was it exempted on Schedule C. The Debtor testified, "My lawyer is looking after that." (*Id.* 21:13-22:7.)

During the questioning, the Debtor asked Gates about the possibility of refinancing their autos to reduce the payments. (*Id.* 18:20-25.) Gates determined that the Debtors had specific legal questions that should be addressed by an attorney and, therefore, adjourned the meeting until March 18, 2014, to give the Debtors an opportunity to actually meet with their attorney. The § 341 meeting was then concluded on March 18, 2014, after Debtors filed a declaration stating they had since met with Gillis and Taylor.

This Motion was subsequently filed seeking a review of the fees that had been paid to Gillis. Two days later Gillis filed a notice withdrawing the Debtors' Plan. No other Plan was filed to replace it. On April 2, 2014, the Trustee filed a motion to dismiss the case because the Debtors were not making the required Plan payments. Gillis appeared on behalf of the Debtors in response to the Motion, however, the default had not been cured by the time of the hearing. Accordingly, this case was dismissed on April 24, 2014. In the dismissal order, the court retained jurisdiction over this Motion.

**Issues Presented.**

The Trustee has requested an order compelling Gillis to disgorge part of the attorney's fee that he received in connection with this case. The Trustee requests this relief pursuant to § 329, which allows the court to consider whether the fees paid exceed

the value of the services rendered in connection with the Debtors' bankruptcy case.[10] The Trustee contends that the chapter 13 "no look" fee exceeded the reasonable value of the services Gillis provided. Gillis has not yet received the entire "no look" fee, however, the court must still decide whether the $2,000 Gillis did receive exceeds the value of the services that the Debtors received.

**Discussion and Conclusions of Law.**

Pursuant to § 329, the bankruptcy court has the authority and duty to supervise the attorneys' fees charged to debtors in bankruptcy cases and, where appropriate, to order disgorgement.[11] *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997). In the Eastern District of California, bankruptcy attorneys who "opt in" to accept a presumptively reasonable flat "no-look" fee are not required to submit formal fee applications. However, these attorneys must execute and file a standard form which sets forth their rights and responsibilities, and those of their clients'.

---

[10] The Trustee also requests that Gillis be ordered to submit fee applications for any further attorney's fees in this case so that the court can determine whether his fees are reasonable. Since the case has subsequently been dismissed, this request is moot.

[11] § 329(b) provides, in relevant part,

> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of such payment, to the extent excessive, to—
>
> (1) the estate, if the property transferred—
>
> (A) would have been property of the estate; or
>
> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
> (2) the entity that made such payment.

11 U.S.C. § 329(b).

7

The attorney agrees to (1) meet with the debtor to review the debtor's debts, assets, liabilities, income and expenses; (2) counsel the debtor regarding the advisability of filing either a chapter 13 or a chapter 7 case, discuss both procedures with the debtor, and answer the debtor's questions. If an objection to the "no look" fee is filed by a party in interest, Local Bankruptcy Rule 2016-1(a) requires the court to determine the appropriate compensation pursuant to §§ 329 and 330, FRBP 2002, 2016, and 2017, and any other applicable authority. The Trustee has filed such an objection.

The attorney bears the burden of demonstrating the reasonableness of the compensation based on the "nature, the extent, and the value of such services, taking into account all relevant factors . . . ." These factors include, (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were beneficial at the time they were rendered. *Sikes v. Crager*, 691 F.3d 671, 676-677 (5th Cir. 2012). Here, the Debtors paid Gillis $2,000 before the case was filed and promised to pay another $2,000 through the chapter 13 plan, which was never confirmed. The Trustee contends that reasonable compensation for the services rendered in connection with this case is not more than $500.

An Attorney's Duty to the Client is Not Delegable to Non-Attorneys. A debtor who retains the services of an attorney for the purpose of a bankruptcy filing is entitled to an appropriate level of prepetition counseling and subsequent representation by that attorney at each crucial stage of the bankruptcy process. An attorney has a duty to meet and advise his or her clients. *See Bill Parker & Assocs. v. Hope (In re Dalton)*, 101 B.R. 820, 821 (M.D. Ga. 1989). (Disallowance of fees was appropriate for chapter 13 attorney who "failed to meet the minimum standards for bankruptcy practice.") The attorney's duty is not delegable to non-attorneys.

Here, the Debtors did not receive any counseling from Gillis, or another attorney, prior to the filing of their petition and schedules. Neither did they meet with an attorney prior to appearing at the § 341 meeting of creditors. They were not counseled by an attorney regarding possible non-bankruptcy alternatives, nor were they so advised

regarding their assets and liabilities. All of that function was performed by a non-attorney named Consuelo. Gillis did not represent the Debtors at their § 341 creditors' meetings. His associate, Taylor, who did appear with the Debtors at their first meeting, was a person unknown to the Debtors and was not familiar with the case. There were multiple errors and omissions in the Debtors' documents that subjected them to possible sanctions.[12] Gillis did not make an effort to preserve the protection of the automatic stay for the Debtors and it expired 30 days after commencement of the case, exposing the Debtors to potential foreclosure or repossession proceedings prior to confirmation of a plan.

Gillis' opposition to the Motion (the "Opposition") was sparse, primarily based on the "no harm, no foul" defense, and contained inappropriate and irrelevant material. Contending that the Debtors' testimony was "ambiguous," and that the "rules do not require a certain time for the attorney to meet with the client," he contends that everyone should be satisfied now that he had actually met with and advised the Debtors. (Opp'n 2:9, Apr. 3, 2014, ECF No. 37.)

Gillis defends his use of the "no look" fee, asserting that it worked out in his clients' best interest, and that any "alleged harm was cured by the meeting with the attorneys." (*Id.* 3:10.) Gillis described this case as a "no brainer" and argues that his representation of the Debtors was acceptable. (Hr'g Tr. 6:8-10, Apr. 10, 2014, ECF No. 44.)

After a careful review of the facts and the record in this case, the court is persuaded that the $2,000 fee paid to Gillis exceeds the value of the services the Debtors received. Gillis has guided these Debtors into two failed bankruptcy cases. They never confirmed a plan to protect their assets and they did not get a discharge of any debts. Gillis did not even protect the Debtors' right to an automatic stay, and any real benefit the

---

[12] In *Kavanagh v. Leija (In re Leija)*, 270 B.R. 497 (Bankr. E.D. Cal. 2001), this court has ruled that the act of signing the schedules and statement of financial affairs, under penalty of perjury, without actually reviewing and approving them constitutes a false oath within the meaning of § 727(a)(4)(A) and warrants denial of the debtor's discharge.

9

Debtors may have received from the filing of this case terminated along with the automatic stay after 30 days. Essentially, Gillis' office only provided the necessary forms and the clerical services necessary to get a petition filed, but the accompanying schedules and documents were virtually worthless based on the numerous errors and omissions. *See In re Dalton*, 101 B.R. at 821. (Any benefit the debtors received was not a result of the attorneys who merely processed the forms, but was a result of the bankruptcy system itself.) The value of Gillis' services is further diminished by the fact that his "procedures" exposed his clients to the risk of discharge litigation. (*See*, footnote 12, *infra*.)

**Conclusion.**

As a licensed attorney, Gillis is an officer of the court, and has a duty to both his clients and to the court. The filing of documents filled with errors and omissions, which were not even reviewed by the Debtors, makes a mockery of the judicial process. Further, Gillis' delegation of duty to a non-attorney and failure to personally advise and represent the Debtors placed them in jeopardy. The court is left with only one conclusion, that the money the Debtors paid to Gillis in connection with this case far exceeded the value of any benefit they may have received during the short life of this case. Therefore, the Motion will be granted. Respondent Thomas O. Gillis, Esq., shall disgorge to the Debtors a portion of the monies he received in connection with this bankruptcy case in the amount of $1,500. Within 14 days, Gillis shall file with the court proof of the disgorgement and serve a copy on Trustee.

Dated: May __30__, 2014

W. Richard Lee
United States Bankruptcy Judge

**Instructions to Clerk of Court**
Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Kristen M. Gates, Esq.
Attorney at Law
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721